**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.

WINDY NESTI,

    *Plaintiff*,

v.

LIFE INSURANCE COMPANY OF NORTH AMERICA,

    *Defendant*.

---

# COMPLAINT

---

Plaintiff Windy Nesti, by and through her counsel of record, McDermott Law, LLC, for her Complaint against Defendant Life Insurance Company of North America, states and alleges as follows:

## I.    PARTIES, JURISDICTION AND VENUE

1.    This is an action arising under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001, *et. seq.*

2.    Plaintiff Windy Nesti ("Plaintiff" or "Ms. Nesti"), at all times pertinent hereto, was and is a resident and domiciliary of the State of Colorado.

3.    Before becoming disabled, Ms. Nesti worked as an Information Assurance Engineer for ISYS Technologies, Inc.

4.    By virtue of her employment, Ms. Nesti was a "participant" in and "beneficiary" of the ISYS Technologies, Inc. Plan ("Plan") as those terms are defined by 29 U.S.C. § 1002(7) and (8).

5.    The Plan is an "employee benefit plan" as that term is defined by 29 U.S.C. § 1002(3).

6. As part of the Plan, employee participants were guaranteed certain long-term disability ("LTD") income replacement benefits and life insurance waiver of premium ("WOP") benefits if they became disabled as defined by the policies.

7. The Plan's LTD benefits were funded by Group Long Term Disability Insurance Policy number SGD-0607335 ("LTD Policy") issued by Life Insurance Company of North America ("Defendant" or "LINA") to Isys Technologies, Inc. in the state of Colorado on January 1, 2016.

8. The Plan's life insurance benefits were insured under Group Policy number SGM-607064 ("Life Policy") issued by LINA to Isys Technologies, Inc. in the state of Delaware on January 1, 2016.

9. LINA is the insurer and designated claim administer for the available LTD and life insurance benefits under the Plan.

10. LINA is a subsidiary company of Cigna Group Insurance.

11. LINA is a Pennsylvania insurance company, organized and existing under the laws of the State of Pennsylvania, with its principal place of business and headquarters in Philadelphia, Pennsylvania.

12. LINA is registered with the Colorado Division of Insurance and conducts the business of insurance in the State of Colorado.

13. The Court has subject matter jurisdiction over the action under 28 U.S.C. 1331 and 29 U.S.C. §§ 1132(e) and (f).

14. This Court has personal jurisdiction over the Defendant.

15. Venue is proper in the United States District Court for the District of Colorado under 28 U.S.C. § 1391(a) & (b) and 29 U.S.C. § 1132(e)(2).

## II.     GENERAL ALLEGATIONS

**A.     The LTD and Life Policies**

16.     Under the LTD Policy, LINA promised that if Ms. Nesti became Disabled while the Policy was in effect, LINA would pay 60% of Ms. Nesti's monthly Covered Earnings rounded to the nearest dollar, less other income benefits.

17.     The LTD Policy defines "disabled" as follows:

> You are considered Disabled if, solely because of Injury or Sickness, you are:
>
> 1. unable to perform the material duties of your Own Occupation; or
> 2. unable to earn 80% or more of your Indexed Earnings from working in your Own Occupation.
>
> After Disability Benefits have been payable for 24 months, you are considered Disabled if, solely due to Injury or Sickness, you are:
>
> 1. unable to perform the material duties of any occupation for which you are, or may reasonably become, qualified based on education, training or experience; or
> 2. unable to earn 60% or more of his or her Indexed Covered Earnings.

18.     Under the Extended Death Benefit with Waiver of Premium provision of the Life Policy, LINA promised that if Ms. Nesti became disabled, her life insurance coverage would be extended without the payment of premium.

19.     In order to qualify for WOP benefits under the Life Policy, Ms. Nesti must meet the following definition of disability:

> "Disability/Disabled" means because of Injury or Sickness an Employee is unable to perform the material duties of his or her Regular Occupation or is receiving disability benefits under the Employer's plan, during the initial 12 months of Disability. Thereafter, the Employee must be unable to perform all of the material duties of any occupation which he or she may reasonably become qualified based on education, training or experience, or is subject to the terms of a Rehabilitation Plan approved by the Insurance Company.

20. Upon information and belief, LINA was responsible for investigating and evaluating claims for benefits and appeals and made all determinations regarding participants' eligibility for and entitlement to benefits under the LTD and Life Policies.

21. LINA was required to ensure that all benefit determinations under the Policies were reasonable and based on the terms of the Plan and the facts and circumstances of each claim.

22. LINA, as the insurer and underwriter of the LTD Policy, is solely liable for the payment of benefits on all approved claims and, if a claim is approved, must pay those benefits from its own funds.

23. LINA, as the insurer and underwriter of the Life Policy, is solely liable for providing life insurance coverage for disabled individuals without the payment of premium and, if a claimant dies while covered under the policy, LINA is solely liable for the payment of a Death Benefit from its own funds equal to the amount in effect on the date the insured became disabled.

**B. LINA's Approval of STD Benefits Under the Regular Occupation Definition of Disability**

24. Ms. Nesti's medical history is most significant for, among other conditions, arachnoiditis, lumbar intervertebral disc degeneration with radiculopathy and facet arthropathy; cervical disc degeneration with moderate disc osteophytes, complex unconvertable hypertrophy and foraminal stenosis; sacroiliitis; chronic pain syndrome (back, leg and shoulder pain); sciatica; lumbago; and muscle spasms.

25. On January 17, 2017, Ms. Nesti ceased working at ISYS Technologies, Inc. due to her disabling medical conditions.

26. Ms. Nesti submitted a claim for short term disability ("STD") benefits, which was approved by LINA under the Regular Job definition of disability on three (3) separate occasions.

27. Despite five opinions of two treatment providers verifying her disability, and two opinions of two LINA medical reviewers finding functional impairments, LINA terminated her STD claim on June 9, 2017.

28. On December 7, 2017, the Social Security Administration determined Ms. Nesti's medical conditions prevented her from performing any substantially gainful occupation, and approved Ms. Nesti's claim for Social Security Disability Insurance benefits.

29. On March 7, 2018, Ms. Nesti filed an appeal of the wrongful decision to terminate her STD benefits.

30. On July 13, 2018, LINA determined for the fourth time that Ms. Nesti met the Regular Job definition of disability contained in the STD policy.

31. LINA paid STD benefits through the maximum STD benefit period July 28, 2017.

**C. LINA's Approval of LTD Benefits under the Regular Occupation Definition of Disability and WOP Benefits under the Any Occupation Definition of Disability**

32. On June 21, 2018, LINA determined for the fifth time that Ms. Nesti's medical conditions prevented her from performing her Own Occupation as an Information Assurance Engineer.

33. Ms. Nesti's claim for LTD benefits was approved, and she received LTD benefits from July 29, 2017 through July 29, 2019.

34. On June 29, 2018, LINA determined for the first time that Ms. Nesti's medical conditions prevented her from performing any occupation, and it approved her entitlement to WOP coverage.

**D.     LINA's Termination of WOP and LTD Benefits under the Any Occupation Definition of Disability**

35.     Only four months after approving Ms. Nesti's WOP and LTD claims, on October 24, 2018, LINA commenced another review of her WOP claim.

36.     By letter dated February 12, 2019, LINA stated, "At this time your claim has been closed and we are unable to continue your claim for Waiver of Premium benefits beyond February 11, 2019.

37.     On March 14, 2019, LINA assigned a new claim manager to Ms. Nesti's LTD claim, which triggered an immediate review to determine whether she would meet the any occupation definition of disability as of July 29, 2019.

38.     By letter dated, August 22, 2019, stated, "Your client's claim has been closed, and no further benefits are payable at this time."

39.     LINA's termination of Ms. Nesti's LTD claim was based exclusively on the medical and vocational reviews performed by individuals who had never met, interviewed, or examined Ms. Nesti. Importantly, one of the reviewing doctors for LINA was Dennis Korpman, M.D.—the same reviewing doctor whose opinion was previously overturned by a medical reviewer who found she was disabled.

40.     Among other things, ERISA requires that an administrator such as Defendant that terminates disability benefits to "set forth, in a manner calculated to be understood by the claimant… A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary." 29 C.F.R. § 2560.503-1(g)(1)(iii) (emphasis added).

41.     The adverse benefit determination letters of February 12, 2019 and August 22, 2019 informed Ms. Nesti that she must file an appeal within 180-days and "may include written comments as well as any new … medical records, test result reports, therapy notes, … diagnostic testing …

6

functional capacity evaluation, Social Security Disability Insurance medical records, testing, or evaluation, and a discussion by [her] treating physician(s) of the medical evidence pointing to a condition that prevents [her] from performing all the material duties of any type of occupation."

42. By letters dated May 8, 2019 and September 11, 2019, Ms. Nesti's counsel requested additional information and a more detailed explanation of LINA's bases for terminating her claims to fully understand the information and documentation necessary to submit on appeal that would "perfect" her claims.

43. LINA's response letter of December 3, 2020 did not address the request and merely explained, "The requested information was contained in the claim file we sent previously. For your east of reference, we have enclosed another copy of the adverse determination letter, which outlines specific reasons for the determination."

44. LINA's adverse benefit determinations and response to the request that LINA identify the information and documentation necessary to perfect her appeal did not mention the necessity of an Independent Medical Examination.

E. **Plaintiff's Appeals of the Adverse Benefit Determination and LINA's Failure to Render Decisions on Her Claims within the ERISA Deadlines**

45. In full compliance with 29 U.S.C. § 1133, Ms. Nesti timely submitted the ERISA-mandated internal appeal to LINA on January 31, 2020, which included medical records, testimonial letters from Ms. Nesti and her family, narrative opinion letters and forms from her treatment providers, a Functional Capacity Evaluation, a Vocational Evaluation, Ms. Nesti's Social Security Disability Claim file, arguments explaining the reasons LINA's decision to terminate benefits was arbitrary and capricious, and other evidence in support of her claim.

46. Under ERISA, 29 C.F.R. § 2560.503-1(i)(4), "the period of time within which a benefit determination on review is required to be made shall begin at the time an appeal is filed in accordance

with the reasonable procedures of a plan, without regard to whether all the information necessary to make a benefit determination on review accompanies the filing."

47. As Ms. Nesti submitted her appeal letter via facsimile on January 31, 2020, ERISA required that an appeal decision be reached within 45-days of that date, or by March 16, 2020. *See* 29 C.F.R. § 2560.503-1(i)(3)(i)

48. By letter dated February 3, 2020, LINA acknowledged receipt of Ms. Nesti's appeal.

49. On February 24, 2020, LINA's medical records reviewer, Dr. Kevin Kohan, requested that Ms. Nesti's treatment providers provide activity restrictions, clinical findings to support those restrictions and the treatment options they were considering.

50. On February 27, 2020, Plaintiff directed Dr. Kohan to the evidence contained in the claim file that was responsive to his request.

51. On March 4, 2020, Plaintiff provided an Affidavit from her treatment provider confirming her responses to Dr. Kohan's questions.

52. LINA did not render an appeal decision within 45-days of its receipt of Ms. Nesti's appeal.

53. Under ERISA, 29 C.F.R. § 2560.503-1(i)(3)(i), if "special circumstances" occurred and LINA was unable to make a decision within the initial forty-five day period, it may extend the decision deadline by an additional forty-five days but must first notify Ms. Nesti in writing of the "special circumstances" warranting an extension and the date by which a decision would be made.

54. From March 9, 2020 through May 4, 2020, LINA unilaterally requested to toll and extend the appeal decision deadlines on five occasions to perform an ERISA mandated medical records review, to obtain responses to the medical records reviewer's questions, and to perform a vocational review.

55. Ms. Nesti objected in writing to each of LINA's requests to delay its appeal decisions, because obtaining medical and vocational reviews does not constitute special circumstances, and the medical records reviewer's questions were already answered by the evidence then existing in the claim file.

56. On April 14, 2020, LINA's medical records reviewer, Dr. Paul Medrek, requested that Ms. Nesti's treaters provide her activities of daily living, an opinion and rationale regarding her impairment, restrictions and limitations, the date of the last evaluation, the frequency of follow-up appointments, and their current treatment plans.

57. Plaintiff submitted a response to Dr. Medrek's questions on April 17, 2020 and once again directed the medical records reviewer to the evidence already contained in the claim file that answered his questions.

58. LINA did not render an appeal decision within 90-days of its receipt of Ms. Nesti's appeal.

59. On May 4, 2020, LINA confirmed that it completed all medical reviews of the records and was moving forward with completing a vocational review.

60. On May 12, 2020—102 days after LINA received Ms. Nesti's appeal—LINA requested she attend an "independent medical examination" ("IME") and indicated it would further toll the deadline to render an appeal decision, which had already expired.

61. Upon information and belief, LINA has instituted a new procedure and practice of requesting a substantially greater number medical evaluations (so-called IMEs) in recent weeks and months, during the internal appeal phase, knowing that such in-person medical evaluations could not likely be conducted on a timely basis during the ongoing Covid-19 pandemic.

62. Upon information and belief, LINA's new procedure and practice of requesting such IMEs is intended to create an excuse for delaying the internal appeal decision deadline.

63. LINA had no right to request an IME after a 45-day extension to review an appeal pursuant to 29 CFR 2650.503-1(i)(3), or to even request an IME at all during the appeal phase. The Department of Labor Regulations clarify the regulation and state as follows:

> (4) Calculating time periods....In the event that a period of time is extended as permitted pursuant to paragraph...(i)(3)... of this section **due to a claimant's failure to submit information necessary to decide a claim**, the period for making the benefit on review shall be tolled from the date on which the notification of the extension is sent to the claimant until the date on which the claimant responds to the request for additional information. 29 CFR 2650.503-1(i)(4)(emphasis added).

64. Requesting an IME during the internal appeal phase of a claim is improper because Defendant had already denied Plaintiff's benefits before deciding there was a need for an IME. If an IME was genuinely necessary, then this fact calls into question whether there was sufficient support of LINA's initial decisions to terminate benefits.

65. Under ERISA, LINA cannot impose obligations or requirements on Plaintiff that are not in the LTD Plan, such as to require an IME on a claim that is "closed" as opposed to a claim that is "pending."

66. By letter dated May 20, 2020, Ms. Nesti objected to the IME request, because the request was untimely, was inappropriate during the internal appeal phase, and it was not authorized by the policy as the claim was closed at the time of the IME request.

67. Under ERISA, if an administrator fails to make a decision within its statutory and/or regulatory deadlines, the claimant is deemed to have exhausted her administrative remedies and her claim is therefore ripe for suit. 29 C.F.R. § 2560.503-1(l) ("In the case of the failure of a plan to establish or follow claims procedures consistent with the requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of the Act on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim.").

68. Under ERISA, 29 C.F.R. § 2560.503-1(i)(4), an administrator's deadline to make a decision on an appeal is only tolled "due to a claimant's failure to submit information necessary to decide a claim." (emphasis added).

69. Corresponding with a claimant regarding his or her claim does not toll the ERISA deadlines. *Heimeshoff v. Hartford Life & Accident Insurance Co.*, 134 S. Ct. 604 (2013).

70. Because ERISA requires an administrator such as LINA to identify in the adverse benefit determination letters "additional material or information necessary for the claimant to perfect the claim," 29 C.F.R. § 2560.503-1(g)(1)(iii) (emphasis added), LINA could not have tolled its 45-day decision deadline unless she had failed to provide information LINA identified as "necessary" to perfect her appeal in its adverse benefit determinations. *See* 29 C.F.R. § 2560.503-1(i)(4). LINA's February 12, 2019 and August 22, 2019 adverse benefit determinations did not inform Ms. Nesti that an IME was necessary to perfect her claim.

71. More than ninety days has expired since Ms. Nesti appealed LINA's terminations of her LTD and WOP benefits.

72. To this day, LINA has not rendered appeal decisions which is a violation of the applicable ERISA Regulations and the Policy, or even the 90-day timeframe assuming an extension was permitted. Thus, LINA's pending decisions are untimely.

73. Because LINA has not made a decision on Ms. Nesti's appeal pursuant to ERISA, 29 C.F.R. § 2560.503-1(l), Ms. Nesti is "deemed to have exhausted the administrative remedies available under the plan" and has the right to file this lawsuit.

74. Ms. Nesti's claims are ripe, and she is entitled to seek the relief requested in this Complaint.

75. Since originally filing her LTD and WOP claims, Ms. Nesti has been and remains disabled as defined by the terms of the policies.

11

76. Ms. Nesti is entitled to LTD benefits under the LTD Policy from the time LTD benefits were terminated on July 28, 2019, and such benefits are due and owing through the date of judgment and the maximum benefit periods of the LTD Policy.

77. Ms. Nesti meets the definition for WOP benefits under the Life Policy from the time her policy was terminated February 12, 2019 and through the maximum benefit periods of the Life Policy, so she is entitled to ongoing life insurance benefits without the payment of a premium.

**F.     LINA's Adverse Decisions Are Not Entitled to Deference**

78. LINA's adverse benefit determinations were not substantially justified, were arbitrary and capricious, were unsupported by substantial evidence, constituted abuses of any discretion allowed, and were wrongful under the circumstances.

79. In terminating her claims, LINA failed to review and consider Ms. Nesti's testimonial letters describing her symptoms, letters from her friends and family describing their observations of her subjective symptoms, information describing her medical conditions, medical records, claim forms and opinion letters from Ms. Nesti's doctors that verified her disability, functional capacity test results and vocational evaluations, among other evidence contained within the claim file proving Ms. Nesti's disability.

80. In terminating her claims, LINA relied exclusively on the opinions of its employed or contracted medical and vocational reviewers.

81. LINA's adverse benefit determinations are contrary to the overwhelming evidence in the file, including the opinions of treatment providers, the valid test results of functional capacity evaluations, the results of vocational evaluations, LINA's nurse case managers, and one opinion from a LINA medical records reviewer.

82. LINA's failure to perform a full and fair review of Ms. Nesti's claim was the result of a conflicted claim process and is therefore not entitled to deference.

**G.     LINA's Pattern and Practice of Violating the ERISA Regulations and Terms of the Plan**

83.     The ERISA regulations provide that the plan administrator shall notify a claimant of the plan's benefit determination not later than 45 days after receiving the claimant's request for review. 29 C.F.R. §2560.503-1(i)(1)(i) and (i)(3)(i).

84.     An administrator is only permitted to request an additional 45 days to render an internal appeal determination when "special circumstances," such as the need for a hearing, prevent a decision from being rendered within the initial 45-day period.

85.     The LTD Policy includes a provision under "Appeal Procedure for Denied Claim" which states, "The Insurance Company has …45 days…from the date it receives a request to review the claim and provide its decision."

86.     The LTD Policy only extends the deadline to render an appeal decision by 45-dayswhen "special circumstances" exist that are outside of LINA's control.

87.     LINA's February 12, 2019 WOP and August 22, 2018 LTD adverse benefit determinations were based in whole or in part on medical judgments.

88.     LINA was required by the ERISA Regulations to consult with a health care professional with appropriate training and experience in the field of medicine as part of the internal appeal process.

89.     During the internal appeal process, LINA had control over and the responsibility for arranging consultations with the appropriate health care professionals and ensuring such consultations were completed in a timely manner.

90.     During the internal appeal process, LINA claimed it needed to "toll" and extend its deadlines to decide Ms. Nesti's appeal and needed extensions of time to obtain responses to the medical records reviewers' questions and to obtain an IME.

91. Upon information and belief, LINA regularly claims a need to "toll" or extend appeal deadlines despite the fact that tolling is only permitted if a claimant fails to submit the information necessary for LINA to decide an appeal, and even though LINA fails to notify the claimant in a denial or benefits termination letter that such information is "necessary" to render an appeal decision.

92. LINA's failure to consult with the appropriate health care professionals in a timely manner did not constitute a special circumstance authorizing an additional 45-days to render the appeal decisions.

93. Upon information, LINA has a pattern and practice of deliberately, in bad faith, and in breach of its fiduciary obligations to insureds like Ms. Nesti, claiming that other information is "necessary" or "required" to make a decision on a disability appeal and that it must therefore "toll" its decision deadline while awaiting the requested information even though its denial or benefits termination letters failed to identify the requested information as being "necessary" to decide the appeal, even though LINA did not find the requested "necessary" to confirm that its benefits termination or denial was proper or correct, and even though the responses to the medical reviewers' questions were not specified as being necessary in the applicable LTD plan documents.

94. LINA's requests to "toll" and extend its decision deadlines has the effect of delaying its obligation to pay compensable claims.

95. Upon information and belief, LINA has a corporate policy of claiming a need to "toll" and extend its decision deadlines in order to delay its obligation to pay compensable claims.

96. Upon information and belief, LINA earns substantial interest and/or return on equity on its holdings, including its cash holdings.

97. Upon information and belief, LINA's corporate policy, pattern, and/or practice of claiming a need to "toll" or extend its deadline to make a decision on an appeal is driven, in whole or

in part, by its desire to delay payment of compensable claims as long as possible in order recoup as much interest and/or return on equity before it may need to pay a compensable claim.

98. Upon information and belief, LINA has a corporate policy, pattern, and/or practice of not paying insureds interest on benefits that are retroactively paid or reinstated following an appeal, or otherwise does not compensate insureds for the use of their unpaid benefits while their claims are denied and unpaid.

99. LINA's pattern and practice of not rendering timely appeal decisions is due in part to its defective claim and internal appeal process or is intentional.

### III.   CLAIM FOR RELIEF
### (Claim for Relief Under ERISA Section 502(a))

100. Ms. Nesti incorporates herein all allegations contained in this Complaint.

101. Ms. Nesti brings this action under ERISA Section 502(a), which, among other remedies provides her with a right to file a civil action to recover benefits due under the Policies and Plan, to enforce her rights under the Policies and Plans, and/or to clarify her right to future benefits under the Policies and Plan. See ERISA Section 502(a)(1)(b), 29 U.S.C. § 1132 (a)(1)(b).

102. The evidence presented to LINA establishes that Ms. Nesti has been continuously disabled under the terms of the Policies from the date benefits began through present.

103. Ms. Nesti has satisfied all conditions precedent to receiving benefits under the Policies.

104. At all relevant times, Ms. Nesti is and has been entitled to LTD and WOP benefits under the Plan and Policies.

105. Defendant ignored and/or unreasonably discredited information supporting Ms. Nesti's entitlement to LTD and WOP benefits under the Policies.

106. By the acts and omissions described herein, and through others likely to be uncovered through discovery, Defendant breached the terms of the Policies.

107. As a direct and proximate result of Defendant's breach, Ms. Nesti has been denied benefits due to her under the LTD Policy and coverage under the Life Policy since the dates her benefits were terminated.

108. Ms. Nesti brings this action to recover past-due LTD benefits (with interest) retroactive to June 29, 2019 (the date LINA ceased paying her LTD benefits) and for a retroactive reinstatement of her Life Policy with a waiver of premium.

109. Because the Defendant repudiated the Plan, Ms. Nesti is entitled to have this Court declare her right to future LTD benefits and WOP coverage.

110. Under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Ms. Nesti may bring a civil action to enjoin any act or practice that violates ERISA or the terms of the Plans.

111. Under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Ms. Nesti may bring a civil action to obtain other appropriate equitable relief to redress LINA's violations of ERISA and the Policies, or to enforce any provision of ERISA or the terms of the Policies.

112. By repeatedly violating multiple provisions of ERISA and the terms of the Policies, Defendant knew or should have known it could cause irreparable financial harm to Ms. Nesti.

113. Defendant is a fiduciary of the Plans for purposes of ERISA Section 402(a)(1) with authority to control and manage the operation and the administration of the Plans and Policies.

114. By delaying payment of compensable claims, while simultaneously earning substantial interest and/or return on equity from the unpaid benefits, Defendant placed its financial interests ahead of Ms. Nesti's and received financial benefits at her expense.

115. By the acts and omissions described throughout this Complaint, and through others likely to be learned through discovery, Defendant forced Ms. Nesti to incur significant attorneys' fees.

116. By the acts and omissions described throughout this Complaint, and through others likely to be learned through discovery, Defendant denied Ms. Nesti of a full and fair review of her claims and appeals.

117. As a Plan fiduciary, Defendant owes Ms. Nesti an equitable duty to remedy and compensate her for the losses they caused her to suffer and when LINA breached its fiduciary obligations.

118. Under 29 U.S.C. § 1132(a)(3), Ms. Nesti is entitled to equitable relief for the separate and distinct harms she suffered from Defendant's violations of ERISA and the Plans, and such equitable relief includes the following:

   a. Acceleration—an action advancing the breaching party's obligations under a contract—is an equitable remedy available under 29 U.S.C. § 1132(a)(3)

   b. Accounting for profits—an action for equitable relief against a person in a fiduciary relationship to recover profits taken in a breach of the relationship—is an equitable remedy available under 29 U.S.C. § 1132(a)(3);

   c. Disgorgement—an action seeking to have the court compel LINA to return improperly gained profits—is an equitable remedy available under 29 U.S.C. § 1132(a)(3);

   d. Injunctive relief is an equitable remedy available under 29 U.S.C. § 1132(a)(3).

   e. Restitution—an action seeking an award of damages against a defendant that has been unjustly enriched at the Plaintiff's expense—is an equitable remedy available under 29 U.S.C. § 1132(a)(3); and

   f. Surcharge—an award of money damages imposed on a fiduciary for breach of duty—is an equitable remedy available under 29 U.S.C. § 1132(a)(3).

119. Ms. Nesti also seeks to recover all awardable interest, attorneys' fees, and costs under 29 U.S.C. § 1132(g).

**WHEREFORE**, Plaintiff Windy Nesti requests the Court to enter judgment in her favor and against Defendant, LINA, as follows:

a) Declare that Plaintiff is disabled within the meaning of the Policies and is entitled to LTD and WOP benefits under the Plans and the Policies;

b) Order LINA to pay Ms. Nesti all past-due benefits under the LTD Policy from the date they became due through the date of judgment, together with interest (both statutory and moratory) on each monthly payment from the date it became due through the maximum benefit period of the LTD Policy;

c) Determine and then declare that Ms. Nesti is entitled to receive LTD benefits under the Policy for as long as she continues to meet the terms and conditions in the LTD Policy for receipt of such benefits;

d) Order LINA to reinstate Ms. Nesti's Life Policy with a waiver of her premiums through the maximum benefit period of the Life Policy;

e) Determine and then declare that Ms. Nesti is entitled to receive WOP benefits under the Life Policy for as long as she continues to meet the terms and conditions in the Policy for receipt of such benefits;

f) Order LINA to pay Ms. Nesti the costs of the suit herein, including reasonable attorneys' fees, under ERISA Section 502(g)(1), 29 U.S.C. § 1132(g);

g) Provide such other and further equitable relief as this Court deems just and proper under 29 U.S.C. § 1132(a)(3), including without limitation the equitable remedies of surcharge, disgorgement, injunctive relief, unjust enrichment, restitution, and/or accounting, in amounts to be proven.

Respectfully submitted this 7th day of June 2020 by:

McDermott Law, LLC

**s/ Mary Susan L. Kern**
_____
Shawn E. McDermott, #21965
Mary Susan L. Kern, #50730
4600 S. Ulster Street, Suite 800
Denver, CO 80237
(303) 964-1800
(303) 964-1900 (fax)
*shawn@mcdermottlaw.net*
*marysue@mcdermottlaw.net*

Plaintiff's Address:
10902 Echo Canyon Drive
Colorado Springs, CO 80908